# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

GARY W. B.,[1]

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

Case No. 5:18-cv-02355-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff seeks review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. This matter is now ready for decision.

## BACKGROUND

In July 2014, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since August 4, 2013. Plaintiff's claims were denied initially and on reconsideration. (Administrative Record ("AR")

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

619-623, 629-640.) An Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, his attorney, and a Vocational Expert ("VE") were present. (AR 519-554.)

The ALJ issued a decision on September 19, 2017. The ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus; lumbar spine degenerative disc disease; left ankle osteoarthritis and history of fracture of the left distal fibula in 2001, status post open reduction internal fixation; psychosis, not otherwise specified; depression, not otherwise specified; and personality disorder, not otherwise specified. (AR 24.) He determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: Plaintiff can stand and walk for two hours out of an eight-hour workday with regular breaks; can perform simple tasks that require only simple work-related decisions with only occasional changes in a routine work setting; can have occasional interaction with coworkers and supervisors; and can have no interaction with the general public. (AR 24.) Relying on the testimony of the VE, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 29.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 31.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

**DISPUTED ISSUE**

1. Whether the ALJ properly evaluated Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ.").

## DISCUSSION

Plaintiff contends that the ALJ improperly discounted his subjective symptom testimony.

### A. Plaintiff's Subjective Complaints

Plaintiff testified that he was unable to work based upon a combination of symptoms. He began by noting that he suffered from bipolar depression and paranoid schizophrenia, explaining that his "social skills aren't what they used to be, and I have a really bad temper problem." (AR 535-536.) Regarding his temper, Plaintiff testified that sometimes he began to cuss at random people. (AR 536-537.) Plaintiff noticed this problem for about four to six months, although he also said that he was not sure because he did not "remember any of it." (AR 536.) The ALJ asked Plaintiff if his medication helped with his temper issue. Plaintiff answered, "a little bit," and then added, "when I take it, at first, till it wears off." (AR 538.)

Plaintiff testified that his schizophrenia was "pretty well under control," and seemed to be okay. Further, the medications he took did not cause side effects. (AR 537.) Plaintiff also suffered from "pretty bad" depression. He experienced depression daily. When the ALJ asked how the depression affected his behavior, Plaintiff responded that it made him "quiet." (AR 537-538.) Regarding his paranoia, Plaintiff testified that he believed the government follows everybody. (AR 538.) In his Function Report, Plaintiff indicated that he was unable to work with the public due to paranoia. (AR 764.)

Plaintiff testified that he had broken his left ankle 17 years earlier and since

that time, the hardware placed inside had become progressively more bothersome. Plaintiff was scheduled to have surgery to remove the hardware, which might help with the pain. (AR 540-541.) He also said that his back hurts when he walks; it feels like it is "going to break" or is crooked. (AR 542.) Plaintiff opined that he can walk for a half hour or forty-five minutes. (AR 541.)

As a result of his diabetes, Plaintiff would "crash" two or three times a week, but then he would drink soda or eat, and his blood sugar would return to normal. (AR 543.)

Plaintiff lived with friends. He would stay at "a couple" different houses with different friends that he had known for a while. (AR 526, 544.) When the ALJ inquired about Plaintiff's alleged problem getting along with people, Plaintiff distinguished people that he trusts. (AR 544.) Plaintiff testified that he has to have somebody with him when he goes to the store because "the paranoia is too much for – when I get around people." (AR 539.) In his Function Report, Plaintiff stated that he had no problems getting along with family, friends, neighbors, or others. (AR 769.) At the same time, he wrote that he is "unable to function around people." (AR 769.)

With regard to daily activities, Plaintiff is able to prepare his own meals; do laundry, "mowing," other yard work, and house cleaning; and take care of dogs. (AR 538-539, 765-766.) Plaintiff goes out approximately twice a week to the store. In his Function Report, Plaintiff indicated that he is able to go out alone (AR 767) but also indicated that he needed someone to accompany him. (AR 768.)

**B. Relevant Law**

Where, as here, a claimant has presented evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms ... and determine the extent to which [those] symptoms limit his ... ability to perform work-related activities ...." SSR 16–3p, 2016 WL 1119029, at *4. Absent a finding that the

claimant is malingering, an ALJ must provide specific, clear and convincing reasons before rejecting a claimant's testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)). An ALJ's written decision must provide "explanation" or "specific reasons" to allow that decision to be reviewed meaningfully and to "ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494; *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (ALJ's statement that claimant's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible to the extent his testimony is "inconsistent with the above residual functional capacity assessment" is an insufficient basis for discrediting testimony).

Factors an ALJ may consider when making such a determination include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, unexplained failure to pursue or follow treatment, and inconsistencies in testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

**C. Analysis**

Plaintiff contends that the ALJ improperly rejected his testimony "that the pain and limitation he suffers from the severe impairments limits and prevents him from performing work activity on a sustained basis." (ECF No. 22 at 6.) In support of this

5

contention, Plaintiff cites the entirety of his testimony at the evidentiary hearing and his Function Report.

As set forth in detail above, Plaintiff alleges that he is disabled by his mental and physical impairments in the following specific ways: (1) he has a "bad temper," limited social skills, and paranoia, all of which make it impossible for him to be around people; (2) he suffers from depression which makes him "quiet"; and (3) he suffers from back and ankle pain which limits his ability to walk to approximately 30 to 45 minutes at a time and then needs to sit for one hour. A careful review of the ALJ's decision makes clear that although the ALJ discredited Plaintiff's general allegation that he was disabled, the ALJ did not necessarily reject Plaintiff's specific allegations regarding his pain or other symptoms. In fact, in large part, the ALJ's RFC is consistent with Plaintiff's testimony. In particular, the restriction against any contact with the public and only occasional interaction with coworkers and supervisors arguably takes into account Plaintiff's difficulty being around people. Similarly, the restriction to standing and/or walking for a total of two hours in an eight-hour day is arguably consistent with Plaintiff's allegation that he can walk for 30 to 45 minutes before needing a one-hour break. Similarly, it is not clear how the ALJ's RFC is inconsistent with Plaintiff's vague allegation that he becomes "quiet."

Nevertheless, to the extent that the ALJ discounted Plaintiff's subjective complaints, the Court concludes that he provided the following legally sufficient reasons for doing so.

(1) <u>Objective medical evidence</u>

So long as it is not the only reason for doing so, an ALJ permissibly may rely on a lack of objective medical evidence to discount a claimant's allegations of disabling pain or symptoms. *See Burch v. Barnhart*, 400 F.3d 676, 681 (2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (same); *see also* SSR 16-3p,

2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities ...").

Here, the ALJ summarized Plaintiff's subjective complaints, including his allegations that he experienced depression and anger issues, had difficulty walking longer than 30 to 45 minutes due to pain, and had trouble being around people due to paranoia. The ALJ then considered the positive clinical and diagnostic findings and concluded that, although they showed that Plaintiff suffered from severe back and ankle impairments as well as severe mental impairments, they were not consistent with Plaintiff's allegations of disabling pain and other symptoms. (AR 25-28.)

In summarizing the medical record, the ALJ began with the evidence related to Plaintiff's diabetes, back pain, and left ankle pain. (AR 25.) Treatment notes from June 2014 indicated that Plaintiff complained of lower back and left ankle pain, but physical examination was generally normal, and Plaintiff was noted to be "physically well." (AR 972-975.) Based upon Plaintiff's complaints of pain, an x-ray was obtained, revealing status post open reduction and internal fixation with degenerative changes. (AR 980.) An examination conducted in September 2014 was unremarkable but for "mild" left ankle pain. (AR 978-979.)

As the ALJ noted, "progress notes and imaging in 2014 showed that [Plaintiff's] ankle condition was stable." (AR 26.) Specifically, in October 2014, Plaintiff recounted a history of left ankle pain but had "no complaints at present time." (AR 1059.) While Plaintiff complained of chronic back pain, he reported that the pain occurred "occasionally" and that the problem was stable. (AR 1062.) Another x-ray of Plaintiff's left ankle was obtained in October 2014, with an impression of stable postsurgical changes, mild osteoarthritic changes at the tibiotalar joint space, and small well corticated plantar calcaneal spur formation. (AR 1067.) X-ray of Plaintiff's lumbar spine revealed multilevel advanced moderate

degenerative disc disease at L4-L5 and L5-S1 and spondylosis. (AR 1068.)

In November 2014, Plaintiff reported that his pain was moderate. Physical examination was unremarkable. (AR 1064-1066.)

Plaintiff was prescribed medications for diabetes. The ALJ remarked that progress notes from 2015 indicated that Plaintiff had been noncompliant with his medications and his diabetes was not well controlled. He was restarted on his medication. (AR 26; *see* AR 1129, 1139.) In February 2016, Plaintiff's diabetes medications were adjusted. (AR 1126-1128.) Plaintiff's diabetes improved the following month. (AR 1125.)

In March 2015, Plaintiff appeared for an office visit, complaining of heel pain and low back pain. He reported taking two Norco a day for pain, indicated that he was under "reasonable analgesic control with current pain regimen," and requested a prescription for three a day. (AR 1072.) Physical examination was normal with the exception of "mild pain w/motion" of Plaintiff's lumbar spine and left ankle. (AR 1074.) An April 2015 examination also revealed normal findings (AR 1150-1151), as did physical examinations conducted throughout 2016. (*See*, *e.g.*, AR 1113 (January 2016), AR 1124 (March 2016), AR 1118-1119 (April 2016), AR 1110-1111 (July 2016), AR 1106 (November 2016), AR 1096 (March 2017). A physical examination in February 2017 revealed normal findings, including no back tenderness, and normal range of motion. (AR 1100-1101.) Examination in March 2017 also included no significant findings. (AR 1096.)

In May 2015, Herman Schoene, M.D., conducted a complete orthopedic evaluation of Plaintiff. Physical examination revealed no abnormal findings. In particular, Plaintiff's gait was normal; the dorsiflexors and plantar flexors of both of his ankles were strong; he had normal range of motion in all joints, including his back and ankles; there was no pain on palpation of the lumbar spine; and there was no evidence of swelling, palpable mass, inflammation tenderness, muscle atrophy, or spasm. A neurological examination showed normal motor strength, sensation, and

reflexes. Dr. Schoene diagnosed Plaintiff with lumbago and a healed fracture of the left ankle. As the ALJ noted that Dr. Schoene opined that Plaintiff is able to perform work at the medium exertional level, including among other things, the ability to stand/walk for six hours in an eight-hour workday. (AR 1082-1086.)

In April 2017, Plaintiff was seen by Daniel J. Patton, M.D., an orthopedic specialist, for evaluation of left ankle pain. Dr. Patton took x-rays of Plaintiff's left ankle, which revealed retained hardware and arthritis. He discussed the option of removing the hardware surgically. As the ALJ noted, Dr. Patton offered Plaintiff a cortisone injection, but Plaintiff declined. (AR 1155-1158.)

With regard to Plaintiff's mental impairments, the ALJ began by noting Plaintiff's history of psychosis. Plaintiff was admitted to the hospital in 2013 based upon auditory hallucinations and symptoms of psychosis. He was treated with medication and therapy. The ALJ observed that Plaintiff "responded well and was released in improved condition." (AR 25.)

The ALJ then noted that Plaintiff began outpatient treatment in August 2013 and notes from that treatment date through 2014 demonstrated that Plaintiff had made significant progress. (AR 25; *see* AR 982-1052.) More specifically, in September 2013 Plaintiff reported hearing voices and feeling like the police were watching him. (AR 1003.) By January 2014, Plaintiff reported feeling better on the medication, although he continued to hear voices at least once a day. (AR 1018.)[2] By February 2014, Plaintiff reported that the audio hallucinations had decreased to every other day. (AR 1024.) In March 2014, Plaintiff stated that the medications "are working for me." (AR 1026.) Treatment notes from May 2014 indicate that Plaintiff was "doing well." Plaintiff's auditory hallucinations occurred only twice a week and sounded "like mumbles." (AR 1037-1039). In June 2014, Plaintiff again reported doing well and indicated that he heard voices about once a week, but that they

---

[2] Although the precise date is not clear, at some point Plaintiff began receiving medication by injection. (*See*, AR 1044, 1203.)

9

sounded "like a mumble." Plaintiff's mood was stable, and he denied paranoia or angry outbursts. (AR 1042.) In July 2014, Plaintiff reported that he was feeling better, things were going well, and he had not heard voices in the past month. (AR 1044.) In August 2014, Plaintiff again denied hearing voices. His mood was noted to be "stable with no anger reported," and he was "verbal, friendly and cooperative." (AR 1046.) Plaintiff also denied hearing voices in September 2014, though he did report "some episodes of depression." (AR 1046-1047.)

The ALJ noted that the record indicated that through 2015, Plaintiff's symptoms were well controlled by his medication. (AR 26.)[3] An annual reassessment dated August 6, 2015 reported that Plaintiff's symptoms – including auditory hallucinations, paranoia, mood swings, and anxiety "are currently well controlled on meds." (AR 1193.) The assessment also noted Plaintiff's mood, affect, thought process, cognition, and thought content were all appropriate. (AR 1194.)

Finally, the ALJ noted that Plaintiff underwent two psychiatric consultative examinations. The first, conducted in November 2014, by Rama Nadella, M.D., revealed two positive findings: Plaintiff endorsed hearing voices, and his mood was anxious and dysphoric. Otherwise, the mental status evaluation was unremarkable. (AR 1053-1056.) The second examination was conducted in June 2015 by Bushra Akber, M.D. Dr. Akber noted the following positive findings: Plaintiff appeared to be under the influence of pain mediation and had some tremors and shakes in his legs; his mood was depressed; he was not able to correctly perform Serial Sevens. Otherwise, the examination was normal. Dr. Akber diagnosed Plaintiff with polysubstance dependence, alcohol dependence, depression, and personality disorder. (AR 1089-1094.)

Considering the foregoing objective medical evidence, the ALJ limited Plaintiff to light work, restricted him to standing/walking for two hours in an eight-

---

[3] As support for this statement, the ALJ cited Exhibit 13F. That exhibit consists of 52 pages of medication history. One page of that exhibit includes the notation that Plaintiff's paranoia, mood swings, decreased need for sleep, and anxiety "are currently well controlled on meds." (AR 1193.)

hour workday, precluded him from interacting with the public and more than occasional interaction with coworkers or supervisors, and limited him to simple tasks with only occasional changes in a routine work setting. The ALJ reasonably could conclude that the objective evidence was inconsistent with Plaintiff's allegations that he was disabled due to an inability to walk or "function" around other people.

Although Plaintiff argues that the medical evidence actually supports his subjective complaints (*see* ECF No. 22 at 8-9), the Court may not second guess the ALJ's reasonable determination to the contrary. *See Saavedra v. Berryhill*, 2019 WL 1171271, at *4 (C.D. Cal. Mar. 12, 2019) ("Although plaintiff argues that the medical evidence actually supports his subjective complaints …, again the Court may not second guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.") (citing *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). In sum, the ALJ's conclusion that Plaintiff's allegations of disabling pain and symptoms beyond those included in his RFC were inconsistent with the medical evidence is supported by substantial evidence. Thus, the ALJ was entitled to rely upon the lack of evidence in assessing the credibility of Plaintiff's allegations.

(2) <u>Symptoms effectively treated</u>

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for ... benefits."). Substantial evidence of effective treatment may provide a specific, clear, and convincing reason to discount a claimant's subjective symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018) (affirming ALJ decision citing "instances where treatment and medication alleviated [the claimant's] symptoms" to discount claimant's testimony).

The ALJ here found that "mental health treatment records demonstrate symptom improvement and a stable mood." (AR 25.) Plaintiff contends that the ALJ erred by relying on evidence of his improvement, pointing out that evidence showing Plaintiff appeared stable "at times" is consistent with an individual suffering from a mental impairment. (ECF No. 22 at 9.)

Plaintiff is correct that an ALJ may not reject a claimant's testimony regarding mental health issues "merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. As the Ninth Circuit has explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017; *see Ghanim*, 763 F.3d at 1164 (ALJ may not rely upon isolated instances of improved psychological symptoms when the record as a whole demonstrates longstanding psychological impairment). Here, however, the ALJ did not cherry-pick the record by highlighting the few periods where Plaintiff's symptoms had temporarily waned. Instead, the ALJ recounted the longitudinal record, explaining that it showed that Plaintiff's symptoms began to improve as soon as he began treatment in September 2013 and continued to improve until Plaintiff's symptoms were well-controlled. As set forth in detail above, Plaintiff's mood became stable in June 2014, and none of the treatment notes after that date reflects it declined. (AR 1042.) Beginning in June 2014, Plaintiff denied continuing paranoia or angry outbursts (AR 1042), and no records thereafter reflect renewed complaints of those symptoms. Finally, in July 2014, Plaintiff reported that he had not heard voices for a month (AR 1044), and Plaintiff continued to deny auditory hallucinations in the ensuing two months. (AR 1046-1047). Plaintiff points to no evidence in the record indicating that these symptoms returned, and the Court's review reveals none. In fact, the annual assessment completed in August 2015 confirms that Plaintiff's symptoms – including

auditory hallucinations, paranoia, mood swings, and anxiety – "are currently well controlled on meds." (AR 1193-1194.) Thus, the ALJ properly relied upon evidence that Plaintiff's symptoms were effectively treated to discount the credibility of Plaintiff's subjective complaints.

(3) Plaintiff declined a cortisone injection

The ALJ found it significant that Plaintiff was offered, but declined, a cortisone injection for his ankle. (AR 25, 1157.) The ALJ could properly rely upon Plaintiff's failure to pursue treatment as a reason to discount the credibility of his subjective complaints. *See Chaudhry*, 688 F.3d at 672 ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified....") (citation omitted); *Molina*, 674 F.3d at 1113 (ALJ may properly consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating claimant's subjective complaints) (citations and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms....").

(4) Conservative treatment

The ALJ found that the medical evidence "regarding [Plaintiff's] back and ankle pain and mental impairments shows conservative treatment and mild to moderate findings." (AR 25.)

With regard to Plaintiff's back impairment, this conclusion was reasonable. As set forth above, Plaintiff's back impairment was treated with prescription medication, and Plaintiff did not report suffering side effects from the medication. Courts have considered treatment to be fairly characterized as conservative – and this is true even when a narcotic pain medication is paired with additional treatment such as epidural

injections. *See Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); *Zaldana v. Colvin*, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (a treatment regimen including Tramadol, ibuprofen, and "multiple steroid injections" was "a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination because the record reflects that plaintiff was treated on the whole with conservative care for her foot pain with good results and improvement."); *see also Huizar v. Comm'r of Social Sec.*, 428 F. App'x 678, 680 (9th Cir. 2011) (noting that the claimant responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications").

With regard to Plaintiff's ankle impairment, the Court notes the evidence that in February 2017, surgery was discussed or recommended. (AR 1157.) Even assuming the ALJ erred by relying upon Plaintiff's generally conservative treatment for his ankle impairment to discount Plaintiff's credibility, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

Likewise, the record does not support the ALJ's characterization of Plaintiff's mental health treatment as conservative. Plaintiff argues that the ALJ erred in this regard because Plaintiff had been admitted to a psychiatric hospital pursuant to 5150 of the California Health & Welfare Code. According to Plaintiff, "admission to a hospital based on a triage level of a risk of harm to self and others is certainly not

routine or conservative." (ECF No. 22 at 10, citing AR 946-955). Plaintiff, however, cites no authority for the proposition that placement on a psychiatric hold precludes a finding that treatment post-dating that hold is conservative. Other decisions indicate to the contrary. *See, e.g., Heard v. Colvin*, 2015 WL 12532321, at *5 (S.D. Cal. Jan. 20, 2015) (ALJ properly relied upon conservative treatment history even though plaintiff had undergone a psychiatric hospital admission under section 5150 prior to treatment); *see also Shaw v. Colvin*, 2016 WL 1715058, at *7 (C.D. Cal. Apr. 26, 2016) (ALJ properly discredited plaintiff's testimony based upon evidence that plaintiff's mental condition was stable when taking his prescribed medication and refraining from abusing illicit drugs, despite evidence that plaintiff had been twice placed on 5150 hold), *report and recommendation adopted*, 2016 WL 1715057 (C.D. Cal. Apr. 27, 2016).

The Court also notes that Plaintiff's treatment involves prescriptions of Prozac, Latuda, Depakote, Risperdal, Seroquel, and other medications. (*See* AR 1189-1190, 1231.) Some courts have recognized that treatment involving several of these medications is not "conservative." *See e.g., Wilson v. Berryhill*, 2018 WL 6321629, at *4 (C.D. Cal. July 9, 2018) (treatment with Prozac, Trazodone, Wellbutrin, Seroquel, Remeron, Zoloft, Ativan, Geodon, Paxil, and Buspirone was not conservative); *Childress v. Colvin*, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (treatment including years of talk therapy, prescription antidepressants – citalopram and trazodone – and prescription antipsychotics – aripiprazole – was not properly characterized as conservative treatment); *Carden v. Colvin*, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (mental health treatment not conservative where claimant's prescription medications had included Zyprexa, Depakote, Geodon, Remeron, Lithium, Zoloft, Risperdal, Wellbutrin, Seroquel, Trazodone and Buspirone). Even assuming the ALJ mischaracterized Plaintiff's treatment as conservative, the error was harmless because the ALJ provided other legally

sufficient reasons for his credibility determination. *See Molina*, 674 F.3d at 1115; *Batson*, 359 F.3d at 1197.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: 10/2/2019

*[signature]*

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE